UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Kelli Pitpit, | No. 2:24-cv-00321-KJM-CSK |
| Plaintiff, | ORDER |
| v. | |
| Teamsters Local No. 150, et al., | |
| Defendants. | |

Plaintiff Kelli Pitpit, a member of Teamsters Local 150 (the Union), brings this employment action against the Union and Dale Wentz, the Secretary-Treasurer of the Union. Defendants move to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The court **grants** the motion in part and **denies** the motion in part.

**I.     BACKGROUND**

Pipit was an elected Business Agent of the Union from 2011 to 2023. Compl. ¶¶ 7, 13, 99, ECF No. 1. Defendant Brian Wentz is the principal officer, or Secretary-Treasurer, of the Union. *Id.* ¶ 9. Every three years, Union members elect officers, Business Agents and a Secretary-Treasurer. *Id.* ¶ 53. Candidates may run as independent candidates or on a "slate" with other nominated Business Agents and a nominated Secretary-Treasurer. *Id.* Pitpit alleges the slate voting mechanism enables the Secretary-Treasurer to thwart independent candidates and "rig" the Union elections. *Id.* ¶¶ 55, 57.

1

      Pitpit reports several conflicts and tensions between herself and other Union members. In 2019, Pitpit asserts Business Agent Perry Hogan "verbally attacked" her after she disagreed with him about an open position on their 2020 slate. Opp'n at 7, ECF No. 18; *see also* Compl. ¶¶ 22–23. In 2021, Pitpit and Wentz reportedly supported different candidates for Teamsters President, and Pitpit says Wentz "snubbed" her by excluding her from a dinner with the newly elected President. Compl. ¶ 31; Opp'n at 7–8. Finally, while serving her 2020–2023 term, Pitpit and fellow Business Agent, Marty Crandall, expressed concerns about Hogan, who reportedly missed meetings and shirked responsibilities. Compl. ¶¶ 36–38. Pitpit alleges Wentz was Hogan's longtime friend, and did not take disciplinary action against Hogan for his absences. *Id.* ¶ 37; Opp'n at 7.

      About a month before the 2023 Union election, Wentz informed Pitpit and Crandall they would not be included on his slate. Compl. ¶¶ 39–42. Pitpit chose not to run as an independent candidate and asserts elimination from the slate "effectively end[ed] her employment." *Id.* ¶¶ 92, 100. Pitpit asserts the candidate who replaced her on the slate is substantially younger and less qualified. *Id.* ¶ 76. Pitpit believes Wentz removed her from the slate because he had "reasonable cause to believe [Pitpit] would take corrective action against Hogan, i.e., be a whistleblower." *Id.* ¶ 91. Pitpit alleges Wentz notified her only thirty days before the nomination meeting intentionally to "deny her the opportunity to organize a competitive independent campaign." *Id.* ¶ 68.

## II.    PROCEDURAL BACKGROUND

Pitpit brings this action against defendants and raises the following claims:

1) Violation of the Labor Management Reporting and Disclosure Act (LMRDA) sections 101(a)(1)–(2) against all defendants;
2) Violation of the California Fair Employment and Housing Act (FEHA) against Teamsters Local No. 150;
3) Violation of the Age Discrimination in Employment Act of 1967 (ADEA) against Teamsters Local No. 150;

2

1    4) Whistleblower Retaliation under California Labor Code[1] section 1102.5 against all
2       defendants; and
3    5) Wrongful Termination in Violation of Public Policy against Teamsters Local No. 150.

*See generally* Opp'n.  Pitpit seeks "compensatory damages, including but not limited to, lost back pay, salary, bonus wages and forward pay, lost fringe benefits, and emotional distress; with legal interest," punitive damages, attorneys' fees and costs, pre-judgment and post-judgment interest, and other discretionary relief.  Compl. at 23–24 ("Prayer for Relief").  Defendants move to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).  *See generally* Mot., ECF No. 17.  The motion is fully briefed.  *See* Opp'n[2]; Reply, ECF No. 19.

This action is related to a case brought by Marty Crandall, *Crandall v. Teamsters Local No. 150, et al.*, No. 23-03043 (E.D. Cal 2024) ("*Crandall*").  Relating cases under the local rule only reassigns the matters to the same judge, without consolidating them.  *See* E.D. Cal. L.R. 123. While this court is not bound by a prior order in a related case, Fed. R. Civ. P. 54(b), orderly administration of litigation "counsels against reopening questions once resolved in ongoing litigation." *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, 369 n.5 (9th Cir. 1989) (internal citations omitted).  The court's understanding of the applicable law has not changed since it issued the *Crandall* order issued.  The court therefore addresses the merits of the pending motion to the extent necessary, without restating the entirety of the contents of the *Crandall* order.

Because plaintiffs Marty Crandall and Kelli Pitpit allege the same five claims for relief and rely on the same operative facts, albeit in separate cases, the court delayed this matter until resolution of defendants' Motion to Dismiss in *Crandall*.  *See* Min. Order, ECF No. 12.  The

---

[1] The complaint incorrectly refers to California Government Code, instead of the California Labor Code.  *See* Compl. ¶ 19.

[2] Plaintiff's opposition exceeds the page limit set by this court in its standing civil order, available on its website.  The court nevertheless considers the filing in its entirety because doing so will not cause prejudice and defendants did not object.  In the future, the court may not read excess pages and may impose sanctions for disregarding this court's standing civil order.

3

1  court granted defendants' motion to dismiss Crandall's claims in part and denied the motion in
2  part on August 20, 2024.  *See Crandall* Order (August 20, 2024), ECF No. 18.  The court
3  dismissed four of Crandall's claims, and limited his LMRDA claim to conduct that is not
4  preempted, thereby foreclosing claims based on the Union's election and election procedures.  *Id.*
5  For Crandall's two dismissed claims related to age discrimination, this court gave him an
6  opportunity to amend his complaint.  *Id.* at 9.  Here, Pitpit abandons her claims under Title IV of
7  the LMRDA but proceeds with her Title I claims under LMRDA sections 101(a)(1)–(2).  Mot. at
8  7; Opp'n at 5.  Pitpit also proceeds with her claims based on alleged age discrimination under
9  FEHA and the ADEA, Whistleblower Retaliation and Wrongful Discharge against Public Policy.
10 *Id.*
11         The court held a hearing on this matter on November 21, 2024.  *See* Mins. Mot. Hr'g,
12 ECF No. 21.  David Graulich appeared for plaintiff.  *Id.*  Constantinos Kerestenzis appeared for
13 defendants.  *Id.*

### III.    SUBJECT MATTER JURISDICTION

15         Defendants move to dismiss the complaint under Rule 12(b)(1) for lack of subject matter
16 jurisdiction.  Mot. at 5; *see* Fed. R. Civ. P. 12(b)(1).  While Pitpit abandoned her claims under
17 Title IV of the LMRDA following this court's order in *Crandall*, defendants argue Pitpit's
18 remaining LMRDA claims are functionally Title IV claims and thereby preempted.  *See* Mot. at
19 10–13.  The court addresses this argument first, as a federal court as a threshold matter must
20 answer affirmatively in every case whether it has jurisdiction.  *See* Fed. R. Civ. P. 12(h)(3).
21         As explained by this court in *Crandall*, bringing a proper Title I suit depends on the nature
22 of the relief sought.  *Loc. No. 82, Furniture & Piano Moving, Furniture Store Drivers, Helpers,*
23 *Warehousemen & Packers v. Crowley*, 467 U.S. 526, 543 (1984); *see also Casumpang v. Int'l*
24 *Longshoremen's & Warehousemen's Union, Loc. 142*, 269 F.3d 1042, 1057 (9th Cir. 2001).
25 While Title I provides union members a statutory bill of rights "with enforcement and appropriate
26 remedies available in district court," *Loc. No. 82,* 467 U.S. at 528, Title IV provides for
27 postelection procedures "with primary responsibility for enforcement lodged with the Secretary of
28 Labor."  *Id.*  To the extent Pitpit challenges the Union's election procedures or the election itself,

4

1  the court does not have jurisdiction. *See Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 532 (1972).

Defendants argue Pitpit's Title I claims are preempted by Title IV because the "substance of the claim—not the statutory basis pled—is controlling." Mot. at 12 (citing *McGuire v. Grand Int'l Div. of Bhd. of Locomotive Engineers*, 426 F.2d 504, 508 (6th Cir. 1970)). In her opposition, Pitpit argues this case is about the exercise of her free speech rights and not the Union's election or election procedures. *See* Opp'n at 10–11. At hearing, defendants further asserted Pitpit's Title I claims are actually Title IV claims because she seeks punitive damages, and an award of such damages would inferentially undermine the results of the Union's election. The court declines to draw such an inference, as the plain language of the LMRDA does not preclude the award of punitive damages for violations of Title I. *See* 29 U.S.C. § 412 (individuals whose rights have been infringed "may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate"); *see, e.g.*, *Murray v. Laborers Union Loc. No. 324*, 55 F.3d 1445, 1453 (9th Cir. 1995) (upholding jury award of punitive damages for violation of union member's free speech rights under LMRDA), *amended on denial of reh'g*, No. 93-15641, 1995 WL 415873 (9th Cir. July 14, 1995).

Reading the complaint in the light most favorable to Pitpit as the court must do at this stage, defendants' characterization of Pitpit's claims is unpersuasive. To the extent Pitpit challenges her removal from the slate as a retaliatory action for speaking out against another Business Agent, and not the Union's election or election procedures, the court has jurisdiction to consider her Title I claims. *See Casumpang*, 269 F.3d at 1056; *see, e.g.*, *Crowley*, 467 U.S. at 541 n.16 ("The exclusivity provision of Title IV may not bar postelection relief for Title I claims or other actions that do not directly challenge the validity of an election already conducted."). The court also has jurisdiction to consider Pitpit's discrimination claims and remaining state law claims. *See, e.g.*, *Bloom v. Gen. Truck Drivers, Off., Food & Warehouse Union, Loc. 952*, 783 F.2d 1356, 1362 (9th Cir. 1986) (LMRDA does not preempt state wrongful discharge claim); *cf. Rodriguez v. Int'l Bhd. of Firemen & Oilers*, No. 96-1247, 1997 WL 327086, at *13 (D. Kan. May 30, 1997) (ADEA creates independent statutory right). The court therefore considers

whether Pitpit's Title I, ADEA and state law claims can survive defendants' challenge under Rule 12(b)(6).

### IV.     FAILURE TO STATE A CLAIM

As in *Crandall*, defendants move to dismiss Pitpit's complaint under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Mot. at 13–18; *see* Fed. R. Civ. P. 12(b)(6). In response, the court begins by assuming the complaint's factual allegations are true, but not its legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citation omitted). The court construes all factual allegations "in the light most favorable to the nonmoving party." *Steinle v. City of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (internal citation omitted). The court then determines whether those factual allegations "plausibly give rise to an entitlement to relief" under Rule 8. *Iqbal*, 556 U.S. at 679.

Courts may not ordinarily consider evidence and other materials from outside the pleadings when deciding whether a complaint must be dismissed under Rule 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Federal Rule of Evidence 201, however, permits a court to take "judicial notice" of a fact if it is "not subject to reasonable dispute" because it is "generally known" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). Defendants request the court take judicial notice of the Department of Labor's (DOL) Statements of Reasons finding Pitpit was not subjected to an adverse employment action. *See* Req. Judicial Notice (Req.), ECF No. 20.

The court **grants** defendants' request for judicial notice but clarifies it is not accepting the truth of any disputed facts in the documents and is not bound by DOL's findings. *See, e.g.*, *Lacayo v. Donahoe*, No. 14-04077, 2015 WL 993448, at *10 (N.D. Cal. Mar. 4, 2015) (taking judicial notice of documents in ruling on Rule 12(b)(6) motion but "only . . . [as to] the existence of the administrative proceedings and the agency's findings" and "not credit[ing] the truth of any fact recounted or matter asserted in the documents").

### A. Violation of Title I of the LMRDA (Claim One)

Pitpit's first claim arises under LMRDA sections 101(a)(1)–(2).[3] Compl. ¶ 66. Section 101(a)(1) of the LMRDA guarantees union members "equal rights . . . to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings." 29 U.S.C. § 411(a)(1). Relatedly, section 101(a)(2) guarantees to every union member the right to assemble, "express any views, arguments, or opinions." 29 U.S.C. § 411(a)(2). "To state a claim under section 101(a)(1), a union member must allege a denial of rights accorded to other members." *Ackley v. Western Conf. of Tenn.*, 925 F.2d 1463, 1474 (9th Cir. 1992) (collecting cases). Additionally, "[t]o state a cause of action for a violation of § 101(a)(2), a union member must allege facts showing that: (1) he or she exercised the right to oppose union policies; (2) he or she was subjected to retaliatory action; and (3) the retaliatory action was 'a direct result of his [or her] decision to express disagreement' with the union's leadership." *Casumpang*, 269 F.3d at 1058 (citing *Sheet Metal Workers' Intern. Ass'n v. Lynn*, 488 U.S. 347, 354 (1989)).

Defendants argue there is no "evidence or allegation that the Union retaliated against Pitpit" for her protected rights under sections 101(a)(1)–(2). Mot. at 9. Moreover, defendants argue the LMRDA protects members from a Union's adverse action, but does not protect members from the actions of other members. In opposition, Pitpit argues the Union violated her statutory rights when Wentz dropped her as a candidate "in retaliation for her speech and her endorsement of a dissident national Teamsters candidate." Opp'n at 13.

Even reviewing the complaint in the light most favorable to Pitpit, the court finds she fails to state a claim under sections 101(a)(1)–(2) on which relief can be granted. Pitpit's assertion that the requisite adverse retaliatory action she experienced was being excluded from the slate of her choice is unconvincing. Adverse action can take myriad forms including membership bans,

---

[3] Following the court's decision in *Crandall*, the parties agreed to not proceed on any claims under section 609 of the LMRDA, erroneously cited as section 608 in Pitpit's complaint. *See* Mot. at 3. Accordingly, the court dismisses Pitpit's LMRDA section 608 claim without leave to amend. *Cf. Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (court may note inadequacy of complaint on its own initiative and dismiss complaint after giving plaintiff notice and opportunity to respond).

1    *Salzhandler v. Caputo*, 316 F.2d 445, 448 (2nd Cir. 1963), suspension, *see, e.g.*, *Casumpang*, 269
2    F.3d at 1059, or removal from elected office during one's term, *see, e.g.*, *Lynn*, 488 U.S. at 354.
3    There is no caselaw to support defendants' contention that the court should find the LMRDA does
4    not protect members from any of Wentz's actions that violate another member's LMRDA rights.
5    *See, e.g., id.* (finding actions of Union President violated rights of member under LMRDA).  But
6    to accept Pitpit's exclusion from the slate was an adverse action under the LMRDA would require
7    a deviation from the LMRDA's text as well as applicable caselaw and would possibly implicate
8    Wentz's own association rights as a Union member.  *Cf. Finnegan v. Leu*, 456 U.S. 431, 442
9    (holding union president maintains "plenary authority to appoint, suspend, discharge, and direct"
10   business agents, including firing those business agents who support political opponents).  Pitpit's
11   exclusion likely diminished her chances of re-election, but members' LMRDA rights do not
12   include the right to hold or be re-elected to office, *see, e.g.*, *Local 115, United Bhd. of Carpenters*
13   *and Joiners of America v. United Bhd. of Carpenters and Joiners of America*, 247 F. Supp. 660,
14   662 (D.Conn. 1965); rather, the core right is a right to run, period.  Here, Pitpit retained the right
15   to run for elected office as an independent candidate—she chose not to run for re-election.
16   Compl. ¶ 92.

17        Because Pitpit fails to plead the requisite retaliatory action, her claims under
18   sections 101(a)(1)–(2) are **dismissed** with leave to amend, if possible, subject to Federal Rule of
19   Civil Procedure 11.  *See AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 636 (9th Cir.
20   2012) ("A district court abuses its discretion by denying leave to amend unless amendment would
21   be futile or the plaintiff has failed to cure the complaint's deficiencies despite repeated
22   opportunities.").

23        **B.     Age Discrimination under the FEHA and ADEA (Claims Two and Three)**
24        Defendants argue Pitpit fails to state a claim for age discrimination under either the
25   ADEA or FEHA because she was not discharged from her employment.  Mot. at 14–15.  As this
26   court explained in *Crandall*, the ADEA prohibits "'discharging' an employee who is over forty
27   years of age 'because of' the employee's age," *Sheppard v. David Evans & Assocs.*, 694 F.3d
28   1045, 1049 (9th Cir. 2012) (quoting 29 U.S.C. §§ 623(a)(1), 631(a)), and the FEHA "prohibits

employers from discharging or dismissing employees over the age of forty based on their age," *Merrick v. Hilton Worldwide, Inc.*, 867 F.3d 1139, 1145 (9th Cir. 2017). *See Crandall* Order (August 20, 2024), at 7–8. Courts apply the same "three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination, including age discrimination" to claims under the FEHA and ADEA. *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 354 (2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Pitpit must first plead a prima facie case, thereby raising a presumption of discrimination. *Merrick*, 867 F.3d at 1145. Although establishing the prima facie case is "not a pleading requirement," *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), a complaint must at least allege a "'plausible' prima facie case of age discrimination," *Sheppard*, 694 F.3d at 1049–50.

Nothing in the complaint here gives rise to a plausible inference the Union discharged Pitpit or she otherwise faced an adverse employment action. Pitpit alleges the Union discharged or otherwise terminated her employment when Wentz "eliminated [her] from the elective slate, effectively ending her employment, and replaced her with a less-qualified and younger person." Compl. ¶ 92. But Pitpit does not allege being on the slate itself is a form of employment, such that her exclusion from the slate constituted termination. Rather she alleges Wentz decided not to run with Pitpit in the election, which "effectively end[ed] her employment." *Id.* Further, Pitpit does not allege the Union barred her from running as an independent candidate. Instead, she alleges she could not run effectively as an independent candidate due to the late notice Wentz gave her and her inability to raise enough in funds to run a realistically competitive campaign. *Id.* ¶¶ 68, 100.

Because Pitpit's complaint does not allege an adverse employment action, she has not stated a plausible prima facie case of age discrimination. The court **grants** defendants' motion as to the ADEA and FEHA claims. Pitpit may be able to state a viable claim under the ADEA and FEHA if she can allege she faced the requisite adverse employment action. Thus, those claims are dismissed with leave to amend if possible, within the confines of Rule 11. *See AE ex rel. Hernandez*, 666 F.3d at 636.

1         **C.      Whistleblower Claims (Claim Four)**

2         Pitpit's whistleblower retaliation claim arises under California Labor Code section 1102.5.

3  As to Pitpit's whistleblower retaliation claims, defendants move to dismiss on the grounds that

4  Pitpit did not show "a causal link between protected action and an adverse employment action."

5  Mot. at 16.  For the foregoing reasons, Pitpit does not adequately plead an adverse employment

6  action, and her whistleblower claims must therefore be dismissed.

7         Section 1102.5 of the Labor Code provides, in relevant part, that an employer, "shall not

8  retaliate against an employee for disclosing information to . . . a person with authority over the

9  employee . . . if the employee has reasonable cause to believe that the information discloses a

10 violation of a state or federal statute."  Cal. Lab. Code § 1102.5(b).  To ultimately prove a claim

11 under section 1102.5, "a plaintiff must first establish a *prima facie* case of retaliation, and

12 establish that [she]: (1) engaged in protected activity, (2) the defendant subjected the plaintiff to

13 an adverse employment action, and (3) there is a causal link between the two."  *Garriott v.*

14 *Boeing Company*, No. 24-4735, 2024 WL 4668504, at *4 (C.D. Cal. Nov. 4, 2024) (citing *Erhart*

15 *v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1108 (S.D. Cal. 2020)).

16        After viewing the complaint in the light most favorable to Pitpit, the court finds no

17 plausible inference can be drawn that Pitpit suffered an adverse employment action, as explained

18 above.  Pitpit alleges Wentz retaliated by removing her from the election slate after she repeatedly

19 protested that Perry Hogan "was failing to work while drawing his $150,000 annual salary."

20 Opp'n at 20.  However, at most Pitpit's allegation suggests the nominating slate itself is a form of

21 employment.  Opp'n at 20.  But Pitpit acknowledges she could have run as an independent

22 candidate and she chose not to.  *See* Req. Ex. 1, ECF No. 20.  Because Pitpit was not barred from

23 running as an independent candidate, she has not shown a concrete adverse action such as a

24 discharge or denial of a job; nor does she provide authority suggesting circumstances in this case

25 can amount to an adverse employment action.  *See generally* Opp'n.

26        Because Pitpit has not provided facts to support a prima facie case of retaliation,

27 defendants' motion to dismiss the whistleblower retaliation and wrongful termination claims is

1  **granted**.  Thus, those claims are dismissed with leave to amend, if possible, within the confines
2  of Rule 11.  *See AE ex rel. Hernandez*, 666 F.3d at 636.

###     D.    Wrongful Discharge (Claim Five)

Under California law, an employee can maintain a tort action and recover damages if their employer discharges them in violation of fundamental principles of public policy.  *See Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 170 (1980).  To state a *Tameny* claim, Pitpit must allege (1) she was employed by defendants, (2) defendants discharged her, (3) a violation of public policy substantially motivated the discharge, and (4) the discharge caused her harm.  *Zolensky v. Am. Medflight, Inc.*, No. 16-788, 2017 WL 1133926, at *6 (E.D. Cal. Mar. 27, 2017) (quoting *Diego v. Pilgrim United Church of Christ*, 231 Cal. App. 4th 913, 920 (2014)).  A violation of the FEHA may support a *Tameny* claim.  *City of Moorpark v. Superior Court*, 18 Cal.4th 1143, 1160–61 (1998).

Pitpit's claim fails because, as discussed in relation to her FEHA claim, she does not allege facts to indicate the Union discharged her.  Pitpit's choice to not run for election as an independent candidate was not a discharge.  While her employment terminated at the end of her 2020–2023 Term, a failure to be re-elected—and not an employer discharge—was the precipitating event.

Pitpit has not provided facts to support a wrongful discharge claim in violation of California law.  The court thus **grants** defendant's motion to dismiss with leave to amend, if possible, within the confines of Rule 11.  *See AE ex rel. Hernandez*, 666 F.3d at 636.

### V.    CONCLUSION

For the reasons above, defendants' motion is **granted,** and plaintiff is granted leave to amend to the extent provided by this order, if possible.

1) To the extent plaintiff challenges the validity of the Union's prior elections and election procedures, the court does not have jurisdiction under Title IV of the LMRDA.  The court **grants** the motion to dismiss in this respect.

2) Defendants' motion to dismiss claim one, violation of LMRDA sections 101(a)(1)–(2) is **granted** with leave to amend.  Further, plaintiff's claim under LMRDA section 609 is deemed abandoned and is **dismissed** with prejudice and without leave to amend.

3) Defendants' motion to dismiss claims two and three, violation of the FEHA and ADEA is **granted with leave to amend**.

4) Defendants' motion to dismiss claims four and five, whistleblower retaliation and wrongful termination is **granted**.  Plaintiff is granted **leave to** amend.

5) Plaintiff may file an amended complaint within twenty-one (21) days of the filed date of this order.  If plaintiff does not file an amended complaint, the court will dismiss this case.

IT IS SO ORDERED.

This order resolves ECF No. 17 & 20.

DATED:  February 5, 2025.

_____
SENIOR UNITED STATES DISTRICT JUDGE